IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

NORA S. SINGLETON                                                                                  PLAINTIFF

VS.                                                          CIVIL ACTION NO. 3:16cv396-FKB

NANCY A. BERRYHILL,
ACTING COMMISSIONER OF
SOCIAL SECURITY                                                                 DEFENDANT

## **ORDER**

### **I. Introduction**

Nora S. Singleton filed for a period of disability and disability insurance benefits on December 7, 2012, alleging an onset date of October 25, 2011. Her application was denied both initially and upon reconsideration. She requested and was granted a hearing before an ALJ, which was held on May 6, 2014. On November 10, 2014, the ALJ issued a decision finding that Singleton is not disabled. The appeals council denied review. Singleton now brings this appeal pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). Having considered the memoranda of the parties and the administrative record, the Court concludes that the decision of the Commissioner should be reversed and this matter remanded to the Commissioner.

### **II. Facts and Evidence before the ALJ**

Singleton was born on September 14, 1964, and was 50 years of age at the time of the decision of the ALJ. She has a high school education and past relevant work experience as a poultry worker at Sanderson Farms. Singleton alleges disability due to neck pain, back pain, shoulder problems, carpal tunnel syndrome, and hypertension.

Singleton has a history of deQuervain's tenosynovitis of the right hand and underwent surgery for the condition in 2009. R. 202, [10] at 205. In August of 2011, she began having problems again and underwent several weeks of physical therapy. R. 194, [10] at 197. Upon discharge from physical therapy in September of 2011, she was experiencing no pain. *Id.*

In 2011 Singleton injured her right shoulder at work, and in October of that year she underwent rotator cuff surgery by Dr. Larry Field. R. 257, [10] at 260. She received physical therapy following surgery and did well. R. 203, [10] at 206. By March of 2012, an MRI of her shoulder showed complete healing with no abnormalities, and she had normal range of motion, strength, and stability of the shoulder. R. 256, [10] at 259. Dr. Field released her to return to her job at Sanderson Farms with no restrictions. *Id.*

In November of 2011, Singleton began experiencing numbness and tingling in her right hand. Dr. Field diagnosed carpal tunnel syndrome and prescribed a hand brace. R. 248, [10] at 251; R. 250, [10] at 253. Nerve conduction studies and electromyography performed in December of 2011 were normal. R. 191, [10] at 194. By March of 2012, Singleton was complaining of neck pain and pain radiating to her right shoulder and arm. R. 267-68, [10] at 270-71. Dr. Field ordered an MRI and referred her to Dr. Jeff Laseter, a pain management specialist. *Id.* Dr. Laseter's impression was that her right shoulder and arm pain represented cervical radiculopathy. *Id.* The MRI revealed moderate degenerative changes, most prominently canal stenosis and foraminal narrowing at C4-C5. R. 265-66, [10] at 268-69. A cervical epidural steroid injection by Dr. Laseter in April of 2012 did not give relief. R. 269, [10]

2

at 272. Dr. Laseter referred her to a physical medicine and rehabilitation specialist, Dr. David Collipp, who ordered a cervical CT and myelogram. These studies showed spondylosis with mild flattening of the cord from C4-5 to C6-7 and osteophytes from C3-4 to C6-7. R. 283-85, [10] at 286-89. There was no evidence of nerve root compression. *Id.* Dr. Collipp's assessment was degenerative cervical stenosis. R. 313, [10] at 316. On August 10, 2012, Dr. Collipp completed an assessment of Singleton's work-related abilities. He opined that she could lift 10 pounds frequently and 20 pounds occasionally, could never climb, twist/bend/stoop, could never reach above shoulder level, and could never walk or stand on slippery floors. R. 263, [10] at 266. He indicated that she had no restrictions on fine finger movements, eye/hand movements, and pushing/pulling. *Id.* It was Dr. Collipp's opinion that Singleton could never return to work at the poultry plant unless it were at the light duty level, which he noted was not available for her at the plant. *Id.* Dr. Collipp continued to see Singleton through December of 2012. Throughout this period, he directed that she was to perform light duty work or to be off work. R. 262, 313, 264; [10] at 265, 316, 267. He emphasized that she could never work on slippery surfaces because of the risk of neurological injury were she to fall. R. 279, 262, 313, 278, [10] at 281, 265, 316, 281. At Singleton's final evaluation by Dr. Collipp, he noted that she was continuing to experience neck pain. R. 277, [10] at 280.

In May of 2013, Singleton began treatment by Dr. Ayanna Jenkins at the Copiah Health Center. R. 295-96, [10] at 298-99. Treatment records through April of 2014 indicate that Dr. Jenkins treated Singleton for cervical radiculopathy, hypertension, and

3

major depression. R. 295-311, [10] at 298-314. Medications prescribed by Dr. Jenkins include Tramadol, Celexa, Duexis, Prednisone, Benazepril HCTZ, Lyrica, Naproxen, and Flexeril. In December of 2012, Dr. Jenkins administered a Toradol injection for Singleton's neck pain. R. 304, [10] at 307.

At the hearing, Singleton testified as follows. She worked at Sanderson Farms from 1988 until 2011. R. 45, 39-40; [10] at 48, 42-43. When she began there, she threw and hung chickens. R. 47, [10] at 50. Later she worked as a trimmer with an inspector. *Id.* She also trained other workers in these positions. *Id.* After her shoulder surgery, Singleton was unable to return to Sanderson because of Dr. Collipp's restriction that she not work on slippery floors. R. 40-41, [10] at 43-44. She explained that she looked for other jobs, such as at McDonald's, but that these also were precluded because of the restriction regarding slippery floors. R. 41, 44; [10] at 44, 47. She has not looked for a sitting job because her lower back prevents her from sitting for long periods of time. *Id.* She testified that before her employment with Sanderson, she had worked at Stuckey's as a cook and loved the job but that she would not be able to perform that kind of work now because of weakness in her hand. R. 45-46, [10] at 48-49. Singleton identified her additional health problems as carpal tunnel syndrome, frequent headaches, spasms in her shoulder, inflammation in her heel, and drowsiness from her medication. R. 42-43, 48-49; [10] at 45-46, 51-52. Singleton wore a hand brace to the hearing. She explained that she wears it only occasionally and was wearing it that day because she had had pain in her hand the night before. R. 43, [10] at 46.

4

Also testifying at the hearing was a vocational expert (VE). The VE classified Singleton's past relevant work as a poultry work as light and skilled. R. 52, [10] at 55. The ALJ posed to the VE the hypothetical of a person of Singleton's age, education, and work history, who can perform sedentary work with the limitation that she not perform overhead lifting and that her work be restricted to following simple instructions. R. 52, [10] at 55. The VE responded that such a person could perform the jobs of small parts assembler, bench assembler, electronics assembler, and electronics worker. *Id.* In the second hypothetical, the ALJ added the necessity of frequent, unscheduled breaks. R. 53, [10] at 56. The VE testified that there would be no work available for such an individual. *Id.* The claimant's attorney then questioned the VE regarding the jobs identified in response to the first hypothetical, adding the additional limitation of only occasionally performing fine manipulation. R. 54, [10] at 57. The VE responded that such an individual would not be able to perform the jobs identified. *Id.*

### III. The Decision of the ALJ

In her decision, the ALJ worked through the familiar sequential evaluation process for determining disability.[1] She found that Singleton had not been engaged in

---

[1] In evaluating a disability claim, the ALJ is to engage in a five-step sequential process, making the following determinations:

    (1)    whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);

    (2)    whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);

    (3)    whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);

    (4)    whether the impairment prevents the claimant from doing past relevant work (if not, the claimant is found to be not disabled); and

5

substantial gainful activity since her alleged onset date and that she met the insured status requirements for Title II benefits through December 31, 2016. R. 16, [10] at 19. At step two, the ALJ found that Singleton has the severe impairments of degenerative disc disease, obesity, and carpal tunnel syndrome and the non-severe impairment of depression. R. 16-17, [10] at 19-20. The ALJ determined at step three that Singleton does not have an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 18, [10] at 21. The ALJ found that Singleton has the residual functional capacity (RFC) to perform the full range of light work as defined by 20 C.F.R. §§ 404.1567(b). *Id.* In determining Singleton's RFC, the ALJ stated that she gave significant weight to the opinions of treating physicians Dr. Field and Dr. Collip that she could return to light work. R. 20, [10] at 23. She considered Singleton's testimony regarding her pain and limitations but determined that they were not entirely credible. R. 19-21, [10] at 22-24. At step four, the ALJ found that Singleton is capable of performing her past relevant work as a poultry worker. R. 22, [10] at 25. The ALJ went on to make an alternative step-five finding that, based upon Singleton's RFC for the full range of light work, Rules 202.13 and 202.20 of the Medical-Vocational Guidelines, 20 C.F.R. Part 4040, Subpart P, Appendix 2, directed a finding of non-disability. *Id.*

---

(5) whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

*See* 20 C.F.R. § 416.920. The analysis ends at the point at which a finding of disability or non-disability is required. The burden to prove disability rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining her burden through step four, the burden then shifts to the Commissioner at step five. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

## IV. Analysis

In reviewing the Commissioner's decision, this court is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990. the ALJ's analysis, and the portions of the record relied upon by her provide substantial evidence for her credibility determination.

As one of her bases for reversal, Singleton challenges the ALJ's finding that she could return to her past relevant work as a poultry worker, arguing that it is not supported by substantial evidence. The undersigned agrees. The ALJ stated in her opinion that she gave significant weight to the opinions of Dr. Collipp and Dr. Field. Yet the ALJ never acknowledged that Dr. Collipp stated unequivocally that Singleton could never return to her job as a poultry worker. Dr. Field's opinion also fails to support the ALJ's determination, as Dr. Field's only treatment and evaluation of Singleton was for her shoulder injury and surgery, and his only opinion was that by March of 2012, her shoulder had healed sufficiently to allow her to return to work Dr. Field never rendered any opinion concerning her cervical stenosis and radiculopathy or its effect on her ability to work. Thus, the ALJ's finding at step four is not supported by substantial evidence.

For these same reasons, the ALJ's alternative step-five finding cannot stand. The grids may be relied upon only where the ALJ finds that the claimant is capable of performing the full range of work in a particular category. *See Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). In the present case, there is no substantial evidence that

7

Singleton can perform the full range of light work.  Dr. Collipp, one of Singleton's treating physicians and one of the two whose opinion the ALJ relied upon, identified numerous limitations on her ability to perform light work, and the other, Dr. Field, never addressed her exertional abilities other than to conclude that her shoulder had healed after surgery.  Thus, it follows that the ALJ's finding of non-disability based upon the grids is not supported by substantial evidence.

## V.  Conclusion

The absence of substantial evidence to support the ALJ's decision requires that the decision of the Commissioner be reversed and this matter remanded for a redetermination of Singleton's RFC and of whether there is any work available for her.

A separate judgment will be entered.

So ordered, this the 4th day of August, 2017.

s/ F. Keith Ball<br>United States Magistrate Judge